IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 20, 2007

## STATE OF TENNESSEE v. ROBERT FRANKLIN DELZELL, III

**Direct Appeal from the Circuit Court for Stewart County**
**Nos. 4-1439-CR-02-R2, 4-1601-CR-05-R1     Allen Wallace, Sr., Judge**

—————

**No. M2006-01822-CCA-R3-CD - Filed June 27, 2007**

—————

The defendant, Robert Franklin Delzell, III, appeals from the judgment of the Stewart County Circuit Court, revoking his community corrections sentence and imposing confinement. Following our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which Joseph M. Tipton, P.J. and Thomas T. Woodall, J., joined.

William B. Lockert, III, District Public Defender and Dawn Kavanagh, Assistant District Public Defender, Ashland City, Tennessee, for the appellant, Robert Franklin Delzell, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Carey Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

It appears from the record before us that in May of 2003, the defendant pled guilty to attempted aggravated sexual battery of a minor and received a sentence of five years to be served on probation. In May of 2005, a probation violation warrant was issued, alleging, *inter alia*, that the defendant had violated the conditions of his probation by committing the offenses of child rape, aggravated sexual battery, and violation of the sexual offender registry law. Subsequently, in March of 2006, the defendant entered a nolo contendere plea to attempted aggravated sexual battery and received a sentence of four years to be served in a community corrections program. Although not entirely clear, it appears that the defendant's five-year probation sentence was revoked and the defendant was ordered to serve the sentence in community corrections consecutive to his four-year sentence. Thus, the defendant received an effective sentence of nine years to be served in a community corrections program. Thereafter, in May of 2006, a warrant was issued alleging that the defendant violated the conditions of his community corrections sentence by failing to remain under

house arrest, by leaving the State of Tennessee without permission, by failing to obey the laws of the State of Tennessee after picking up new criminal charges in Stewart County, and by failing to pay all court costs and supervision fees.

A revocation hearing was held; whereupon, April Clark, the director of the community corrections program, testified that Lance Parker was the defendant's community corrections supervisor. On May 9, 2006, Mr. Parker filed a Violation of Community Corrections Warrant against the defendant. According to Mr. Parker's records, the defendant violated the conditions of his community corrections sentence by leaving the Nashville Rescue Mission and going to Stewart County and the State of Kentucky without permission. The defendant also violated the conditions of his community corrections sentence by incurring new charges. Ms. Clark did not expound upon what those charges were.

Officer Mark McElroy of the Stewart County Sheriff's Department testified that he brought charges against the defendant for violating the requirements of the sex offender registry. According to Officer McElroy, the defendant was seen outside a residence in Stewart County on May 8, 2006. However, the defendant was supposed to be in Nashville at a mission. Although the defendant could not be located at the residence, the owner of the residence, Richard Jones, told Officer McElroy that the defendant had been dropped off around 1:00 p.m. that day. Officer McElroy noted that he learned four children lived at this residence and that police records showed the defendant left the Union Rescue Mission on April 30, 2006.

Richard Jones testified that the defendant was dropped off near his house around 11:00 a.m. Mr. Jones spoke with the defendant and the defendant told him he was "trying to get a car from the next door that was his." Mr. Jones testified that Janet Delzell did not live in the house next door.

The defendant testified that he had not left the mission for eight days prior to his arrest. The defendant further testified that he was arrested in a little park in Nashville across the street from a public library, and not in Stewart County. According to the defendant, he went to Stewart County and stayed "an hour or two" in order to get his car. The defendant first denied going to Kentucky then admitted going to Kentucky with his ex-wife before going to Stewart County.

The state then called Janet Delzell, the defendant's ex-wife, to testify. Ms. Delzell stated that the defendant accompanied her to Kentucky to pick up her paycheck. According to Ms. Delzell, the defendant did not want to drive back to Nashville so they stopped at a motel to get a room for the night. However, once in the room, the defendant became "violent and held a knife to my throat, [and] told me that if I kept the kids from him that he would try to kill me." Thereafter, Ms. Delzell took the defendant to Stewart County and dropped him off. Ms. Delzell stated that her seven-year-old daughters were the victims in the prior case for which the defendant got community corrections. Ms. Delzell asserted that the defendant stayed in Stewart County overnight because he told her he drove by and saw police at her mother's house in Stewart County. Ms. Delzell also noted that her daughters lived with her mother in Stewart County.

At the conclusion of the hearing, the trial court made the following findings:

> This man is being charged with a very serious crime. He's on probation with Community Corrections for that crime and he just ignored the conditions of Community Corrections. He is - - I can't understand that lady going anywhere with him, she did; but that [doesn't] relieve his responsibility or his duty that he had under the Community Corrections program. . . . [T]hese little girls are seven years old, twins and live in this county; and he is right back around close to them. There's no reason - - no excuse. I'm going to violate him and let him serve time in the Tennessee Department of Corrections, that's the judgment of the Court.

On appeal, the defendant first argues that the trial court erred in revoking his community corrections sentence based on grounds other than those alleged in the revocation warrant. The defendant contends that the court's generalized findings violated his due process right to notice of the charges against him.

A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that the defendant has violated a condition of that sentence. *See State v. Harkins*, 811 S.W.2d 79, 82-83 (Tenn. 1991); *see also* Tenn. Code Ann. §§ 40-36-106(e)(3), - 40-35-311. Revocation of a community corrections sentence is subject to an abuse of discretion standard of review rather than a de novo standard. *Harkins*, 811 S.W.2d at 82. Discretion is abused only if the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred. *Id.*

Community corrections revocation, like probation revocation, is commonly predicated upon a showing of a violation of the conditions of the program. *State v. Michael Harlan Byrd*, No. 01C01-9609-CC-00411, 1998, WL 216859, *6 (Tenn. Crim. App., at Nashville, May 1, 1998). Due process requires that a defendant be given advance written notice of the grounds upon which the revocation of probation or community corrections is based. *See Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Stacy Stewart v. State*, No. M1999-00684-CCA-MR3-CD, 2000 WL 374756, *2 (Tenn. Crim. App., at Nashville, Apr. 7, 2000). The burden then falls on the state to prove the alleged violation by a preponderance of the evidence. *See Byrd*, 1998 WL 216859, at *5. A revocation based on grounds not alleged and noticed to the defendant violates due process. *See id*.

Upon review, we initially agree with the defendant that the trial court's findings are somewhat generalized and nondescript as to what violation it was relying on in revoking the defendant's community corrections sentence. However, the record reflects that the defendant had notice that the state was seeking to revoke his community corrections sentence based on a number of violations, including the fact that the defendant violated the conditions of his community corrections sentence by (1) not remaining under house arrest and (2) leaving the State of Tennessee without the consent of the community corrections program. It is our view that the state proved by a preponderance of evidence that the defendant violated these two conditions of his community corrections sentence. In response to the evidence presented, the trial court simply expressed concern

over the gravity of the defendant's actions in disregarding the expressed rules of the community corrections program. As such, we perceive no abuse of discretion by the trial court in revoking the defendant's community corrections sentence and ordering him to serve his sentence in confinement.

The defendant also argues that the trial court improperly relied on facts underlying his prior convictions to enhance his sentence. However, the defendant's argument is misplaced in that his sentence was not enhanced. The record clearly reflects that the court revoked the defendant's community corrections sentence and ordered the defendant to serve the remainder of his sentence in confinement as authorized by Tennessee statute.[1] Accordingly, we perceive no error in the court's revocation of the defendant's sentence. The judgment of the trial court is affirmed.

_____
J.C. McLIN, JUDGE

---

[1] Tennessee Code Annotated section 40-36-106(e)(2) states:

In sentencing an eligible defendant to any community-based alternative to incarceration, the court shall possess the power to set the duration of the sentence for the offense committed at any period of time up to the maximum sentence within the appropriate sentence range, and *shall retain* the authority to alter or amend at any time the length, terms or conditions of the sentence imposed. (emphasis added).